# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**SHEILA G. RICHARDSON**                                           **Plaintiff**

v.                                                               **Civil Action No. 4:05CV200-P-B**

**JO ANNE B. BARNHART,**
Commissioner of
Social Security                                                           **Defendant**

## REPORT AND RECOMMENDATION

Plaintiff, Sheila G. Richardson, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding her application for disability benefits under Title II. The matter has been referred to the undersigned United States Magistrate Judge for issuance of a report and recommendation.

## Administrative Proceedings

Plaintiff filed an application for disability benefits under Title II on August 20, 2002, alleging a disability onset date of March 20, 1998. (Tr. 14). The application was denied initially and on reconsideration. (Tr. 28-35, 38-41). In a hearing decision dated October 18, 2004, an administrative law judge (ALJ) found that Plaintiff was not disabled as defined in the Social Security Act prior to her last date of Title II insurance coverage, September 30, 2000. (Tr. 14-17, 29, 52). Plaintiff filed a request for review of that decision, which the Appeals Council declined on March 11, 2005. (Tr. 4-6). The ALJ's hearing decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Facts

Plaintiff was born December 4, 1947, (Tr. 49), and was 56 years of age at the time of the

hearing decision on October 18, 2004. (Tr. 49). She completed high school in 1965. (Tr. 63). Plaintiff has previous work experience as cosmetologist, craftsman, receptionist, office clerk, tax collector, and picture framer. (Tr. 73-80). Plaintiff alleged that she could not work due to fibromyalgia, arthritis, and nerves. (Tr. 57). She was five feet and four inches tall and weighed 160 pounds. (Tr. 56). After a review and evaluation of the medical evidence of record, the subjective testimony at the hearing, (Tr. 242-52), and the testimony of a vocational expert, (Tr. 245), the ALJ found Plaintiff not disabled prior to her last date of Title II insurance. (Tr. 14-17). Contrary to Plaintiff's allegation of disability, the ALJ found that she had the residual functional capacity (RFC) to perform light work under Agency regulations (Tr. 17). Such work requires lifting or carrying more than ten pounds frequently and twenty pounds occasionally. (Tr. 32). *See* 20 C.F.R. § 404.1567(b). Also, this finding indicates that Plaintiff could stand for six hours in an eight-hour work day and sit for at least two hours in an eight-hour work. *See id.*

## Standard of Review

This Court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal standards were applied. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, in applying the substantial evidence standard, this Court scrutinizes the record to determine whether such evidence is present. This Court will not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Id.*, citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *see also Myers v. Apfel*, 238

F.3d 617, 619 (5th Cir. 2001).

## Law

To be considered disabled and eligible for benefits, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1]  *Id*.  §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236

---

[1] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).

3

(5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990). The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. *Id*. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan*, 38 F.3d at 236; *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir.1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id*.; *accord Selders*, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history," *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

Because Plaintiff's Title II insured status expired on September 30, 2000, she must

---

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994)("Medical-Vocational Guidelines").

establish that she became disabled on or before that date to be eligible for benefits. *See Barraza v. Barnhart*, 61 Fed.Appx. 917, 2003 WL 1098841, at *1 (5th Cir. 2003) (*citing Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) ). "Evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not relevant to the Commissioner's Title II disability analysis." *See id.* (*citing Torres v. Halala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995) ).

## Analysis

In her Brief, Plaintiff contends the ALJ's decision is not supported by substantial evidence because 1) he failed to adequately develop the record; 2) it was based upon an "impermissible selective reading" of the record; 3) he failed to use a medical advisor to help establish the date of disability onset; 4) he failed to consider the combined effect of Plaintiff's severe impairments; and 5) he failed to properly consider lay evidence relating back to the claimed period of disability. Lastly, Plaintiff contends the ALJ applied the wrong legal standard in evaluating the severity of Plaintiff's impairments.

*Issue 1*

Plaintiff contends the ALJ failed to fully develop the record because he failed to recontact Dr. Robert McMurray, plaintiff's rheumatologist; he failed to specifically elicit testimony from plaintiff about her limitations prior to the date of the expiration of her insured status; and he failed to propound questions to the VE, detailing plaintiff's limitations. Plaintiff's Brief at pp. 5-11. It is the duty of the ALJ to "fully and fairly develop the facts relative to a claim for benefits." *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1998). If the ALJ does not have a sufficiently developed record, he or she cannot make an informed decision, and therefore, his or her

5

determination of disability is not based on substantial evidence. *Id.*

As regards Dr. McMurray, the ALJ found Dr. McMurray's opinions about the severity and limiting affects of Plaintiff's impairments were only relevant to the period after July 2003, almost three years after the expiration of Plaintiff's insured status. (Tr. 16). On October 27, 1998, Dr. McMurray wrote a letter to Eugene F. Webb, M.D., Plaintiff's general practitioner, and stated that Plaintiff's history and a physical examination were consistent with a diagnosis of osteoarthritis and fibromyalgia. (Tr. 145). He recommended a prescription for Flexeril and the use of Tylenol and Glucosamine and an exercise plan. (Tr. 145).

On January 6, 1999, Dr. McMurray examined Plaintiff and noted she had osteoarthritis and "flaming" fibromyalgia that had been uncontrolled on Flexeril, Glucosamine Chondroitin Sulfate and Wellbutrin. (Tr. 105). He further noted plaintiff had documented degenerative joint disease, disk disease and fibromyalgia. *Id.* Dr. McMurray increased plaintiff's Flexeril to a regular dose and added a prescription for Melatonin. *Id.*

On July 19, 2001, Dr. McMurray stated that Plaintiff had significant degenerative disc disease, osteoarthritis, fibromyalgia, and had been relatively stable to improve on current medical therapy with Flexeril, Neurontin and Vioxx. (Tr. 136). Physical examination showed relatively good range of motion with no significant weakness or neuropathy of her upper extremities. (Tr. 136). It was Dr. McMurray's opinion that Plaintiff continued to suffer from osteoarthritis and degenerative disc disease and should continue her medications. (Tr. 136). He indicated that he had prescribed physical therapy with heat, ultrasound, and massage for two weeks. (Tr. 136).

In a letter dated February 14, 2002, Dr. McMurray stated that Plaintiff had osteoarthritis, fibromyalgia, cervicalgia, and "had been doing relatively well until a recent flare of disease

6

secondary to stress. " (Tr. 129). He stated that Plaintiff's musculoskeletal examination was remarkable for osteoarthritis of the hands and neck and scattered tender points of fibromyalgia. (Tr. 129). It was Dr. McMurray's impression that Plaintiff's conditions were stable and that she could continue her current medications and that he would follow her on an annual basis. (Tr. 129).

In a letter dated July 24, 2003, Dr. McMurray stated that Plaintiff had severe multi-level degenerative disc disease with radiculopathy, as well as osteoarthritis of the cervical and lumbar spine. (Tr. 128). He also indicated that Plaintiff had significant pain secondary to fibromyalgia. (Tr. 128). On August 9, 2004, almost four years after Plaintiff's last date of Title II insurance coverage, Dr. McMurray noted that Plaintiff could lift ten pounds occasionally, less than ten pounds frequently, and could stand for at least two hours in an eight-hour work day. (Tr. 157). He also found that Plaintiff must alternate between sitting and standing periodically due to pain. (Tr. 158). He also indicated postural limitations, including no crouching, crawling, or stooping. (Tr. 158). Plaintiff was limited in her manipulative abilities, but had no sensory limitations. (Tr. 159). Dr. McMurray stated that he included Plaintiff's subjective reports in forming his opinion about her limitations. (Tr. 158).

In this case, the record contained sufficient evidence for the ALJ to determine the extent of Plaintiff's impairments. The ALJ referenced all of Plaintiff's treatment by Dr. McMurray as set out above and pointed out that "Dr. McMurray's treatment notes consistently document the claimant's status as 'stable to improved." (Tr. 15-16). The ALJ noted the fact that Dr. McMurray identified only one exacerbation of fibromyalgia in January 1999, the period in question, and that flare-ups became more common only beginning July 2001. (Tr. 15). As such,

7

the ALJ concluded Plaintiff's condition was stable on medication until 2001. (Tr. 16).

Next with regard to Plaintiff's contention that the ALJ failed to elicit testimony from her regarding her limitations during the relevant period, I find it is simply without merit. The transcript of the hearing held September 27, 2004, clearly indicates the ALJ pointed out to Plaintiff prior to receiving any testimony from her, that she had to establish that she became disabled on or before September 2000. (Tr. 243). Furthermore, in questioning Plaintiff about certain activities of daily living, the ALJ specifically asked Plaintiff "how long ago" it had been since she vacuumed, swept, etc. (Tr. 245-46).

Lastly, Plaintiff claims the ALJ should have propounded hypothetical questions detailing her limitations to the VE. This contention is also lacking. Because substantial evidence in the record supports the ALJ's conclusion that Plaintiff was able to return to her past relevant work, it was not necessary to obtain the testimony of a vocational expert regarding the existence of other work which Plaintiff was capable of performing. *See Harper v. Sullivan*, 887 F.2d 92 (5th Cir. 1992).

*Issue 2*

Plaintiff contends the ALJ's decision was based on an impermissible, selective reading of the record. Plaintiff's Brief at pp. 11-13. Essentially, Plaintiff suggests the ALJ's decision is not supported by substantial evidence because it is not supported by the testimony of a vocational expert or medical advisor and because the ALJ didn't consider Dr. McMurray's August 9, 2004 Medical Source Statement. As pointed out above, the ALJ was not obligated to seek expert testimony in this case because substantial evidence suggested that during the relevant period she had the ability to perform her past work. As regards Dr. McMurray's medical source statement

which indicated Plaintiff had the ability for only less than sedentary work, it was completed on August 9, 2004, almost four years after Plaintiff's last date of Title II insurance coverage. (Tr. 157-60). Indeed, prior to September 2000, Dr. McMurray's treatment notes make no such reference to manipulative limitations as outlined in the said Medical Source Statement. (Tr. 159).

*Issue 3*

Next, Plaintiff makes a general argument that the ALJ should have employed the services of a medical advisor for help establishing the date of disability onset. Plaintiff's Brief at p. 14. Yet, Plaintiff offers no explanation or authority in support of the position that the ALJ erred in accepting her proffered onset date. For this reason, Issue 3 is without merit.

*Issue 4*

Plaintiff suggests the ALJ failed to consider the combined effects of her severe impairments. Plaintiff's Brief at pp. 15-16. Additionally, Plaintiff contends the ALJ completely failed to consider the fact that she had a "severe" sleep disorder. First, Plaintiff can point to no clinical or other objective medical findings in the record supporting a sleep disorder, let alone a severe one.

Next, the record indicates the ALJ considered the combined effect of Plaintiff's severe impairments. At step three of the sequential evaluation process, the ALJ specifically found Plaintiff had no combination of impairments that met or equaled the listings. (Tr. 17). Also, the ALJ's decision points to the fact that Plaintiff's degenerative disk disease, osteoarthritis and fibromyalgia were *all* controlled by medication and stable well into 2001. (Tr. 16). Accordingly, the instant assignment of error is meritless.

9

*Issue 5*

Plaintiff argues the ALJ failed to consider lay evidence from Plaintiff relating back to the alleged period of disability. Plaintiff's Brief at p. 17. This lay evidence apparently consists of Plaintiff's application and other subjective statements regarding her alleged limitations and symptoms. During the administrative hearing, the ALJ admitted these identified subjective statements of Plaintiff. (Tr. 242-43, Tr. 49-51, 70-88, 89-95). They were made a part of the record, and the ALJ expressly stated he had considered them. (Tr.14). Because Plaintiff has made no showing whatsoever that the ALJ actually did not consider this evidence, this argument is without merit.

*Issue 6*

Lastly, Plaintiff claims the ALJ failed to apply the standard in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), in determining the severity of her impairments. Plaintiff's Brief at p. 16. Plaintiff again suggests she had a severe sleep impairment. As pointed out above, beyond Plaintiff's report to her rheumatologist that she had a sleep impairment, (Tr. 145), there is no medical evidence supporting the same. Ultimately, the ALJ found all of Plaintiff's other alleged impairments to be severe and, therefore, any error was harmless. (Tr. 16-17).

**Recommendation**

For the foregoing reasons, it is my recommendation that the decision of the Commissioner be affirmed.

The parties are referred to Local Rule 72.2(D) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within

ten days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**SUBMITTED THIS**, the 13th day of March, 2007.

    **/s/ Eugene M. Bogen**
    **UNITED STATES MAGISTRATE JUDGE**